EQUITY JURISDICTION—MORTGAGE—PRACTICE.

ROBERT HABERSHAM & SON, Complainants, *vs.* SAMUEL MILLER BOND, JAMES P. SCRIVEN, & al. Defendants.

### In Equity—Bill and Demurrer.

1. To oust the jurisdiction of Equity, a party's remedy at common law must be adequate, complete, and adapted to the exigency of the case.

2. The lien of a junior mortgage, on the premises, is destroyed, by a sale under foreclosure of an elder one.

3. But the junior mortgage has an equitable claim on the fund, raised by the sale, after the elder mortgage is satisfied.

4. A court of law cannot, on mere motion, order the proceeds of property to be paid to a mortgage, not foreclosed.

5. A court of law will distribute a fund, by rule, only where the rights of the parties are so clearly ascertained, that no resort to Equity is necessary.

The Bill, filed in the above cause, sets forth the following facts:—That Samuel Miller Bond, of the county of McIntosh, and one of the above named defendants, on the fifth day of May, one thousand eight hundred and thirty-seven, made and signed his certain promissory note, in writing, whereby he promised, sixty days after the date thereof, to pay to the complainant, Robert Habersham, the sum of two thousand four hundred and twenty-seven dollars, and twenty cents; and that, on the 24th day of May, one thousand eight hundred and forty, he made and signed his certain other promissory note, whereby he promised, on the first day of January, one thousand eight hundred and forty-one, to pay to the said complainants, Robert Habersham & Son, the sum of four thousand three hundred and sixty-seven dollars and eighty-two cents—That to secure the payment of the first mentioned note, and all debts then due by him to said complainants, by any note, draft, bill of exchange, acceptance, open account, or balance of account, and all such other debts, as might then be due, owing, and payable, or which might, thereafter, become due and payable, to the complainants, by the said Samuel Miller Bond,

[Habersham & Son *vs.* Bond, & al.]

on any other note, draft, bill of exchange, or acceptance, which might be given or drawn, by the said Samuel Miller Bond, to or on the complainants, &c. the complainants being the factors and agents of the said Samuel Miller Bond, for the sale of his crops, and being, in that character, frequently called on by him, for advances and supplies; he, the said S. M. Bond, did, on the eighth day of April, one thousand eight hundred and forty, make and execute a mortgage to complainants, upon all that rice plantation, in McIntosh County, known as Ceylon, the residence of the said Samuel M. Bond, and upon a summer residence, in said County, called Grass Knoll, and also upon ten negro slaves; which said mortgage appears to have been duly recorded, in the Clerk's office of the Superior Court, for the said County of McIntosh, on the 9th day of April, 1840—That there is now due and unpaid, upon the note first above mentioned, the sum of two thousand five hundred and fifty-five dollars and three cents, principal and interest; and, on the note last above mentioned, the sum of two thousand four hundred and fifty-four dollars and eighty-five cents, principal and interest, making, in the aggregate, five thousand and nine dollars and eighty-eight cents.

That *prior* to the making and executing the said mortgage, to said complainants, the said Samuel M. Bond had made and executed a mortgage, on the said plantation called Ceylon, to secure a large debt, due by him to the Trustees of the General Assembly of the Presbyterian Church, in the United States of America. That this last mentioned mortgage was foreclosed, upon the said plantation called Ceylon, and the same was levied upon, under an execution upon said foreclosure, by the Sheriff of McIntosh County, and exposed to sale, on the first Tuesday in February last, and was then sold, for the sum of thirteen thousand dollars. That, after paying and satisfying the execution, issuing upon the foreclosure of the last mentioned mortgage, under which the said plantation called Ceylon was sold, there remains a large balance, say about nine thousand dollars. That one James P. Scriven, of the County of Chatham, and a corporation, known as the "Female Asylum of the City of Savannah," and one Susan Couster, administratrix with the will annexed of Lucas Lucena, have respectively claimed the said balance, so arising from said sale, and have given notices to the Sheriff of McIntosh County, to that effect, under various executions of fieri facias, issued upon judgments at

[Habersham & Son *vs.* Bond, & al.]

Law, recovered by the said claimants, against the said Samuel Miller Bond, all of which judgments are conceded by counsel to be junior, in point of date, to the mortgage executed to the complainants. That, in consequence of said notices, so given to the said Sheriff, and claims so interposed, the said Sheriff, as complainants are informed and believe, has deposited the said balance of money, arising from said sale, in the Planter's Bank of the State of Georgia, in the City of Savannah, subject to the order of this Court, for its distribution, among those who might be entitled to receive the same—That complainants had also caused a claim for the said money to be interposed, and a notice to be served on the said Sheriff, to that effect, under the lien, created on said plantation, by their mortgage—That the said plantation, so mortgaged to the complainants, having been sold by the foreclosure of an older mortgage, and the oldest lien upon it ; a good title was procured to the purchaser, who was the defendant, James P. Scriven, and that, therefore, the complainants' right, to follow the land with their mortgage, for the enforcement of its lien, was destroyed—That unless the complainants are paid, out of the proceeds of the sale, now in the Planter's Bank for distribution, their lien will be entirely lost to them, on the said plantation, and younger judgments will be satisfied, in preference to their said mortgage— That complainants have caused their mortgage to be foreclosed, on the personal property conveyed in it, execution to issue, and the said negroes to be levied on and advertised for sale, on the first Tuesday in June next. These are the principal facts, as alleged in the face of complainants bill. The prayer of their bill, is—That, by the decree of this Honorable Court, the complainant's mortgage and lien may be respected, and enforced, and that their debt against the said Samuel M. Bond, secured by the said mortgage, may be paid out of the fund, raised upon the sale of said plantation, and now deposited in the Planter's Bank, for distribution as aforesaid, in preference of the said judgments, under which the said defendants claim. And that the said complainants may be decreed to have a lien, upon the said fund, to the extent and amount of the debt, due them in their said mortgage and for such other and further relief, as shall seem meet, and agreeable to Equity and good conscience.

To this bill, the defendants have filed a general demurrer, for want of Equity. This demurrer admits all the facts, as stated in the bill,

to be true—And the question, which is, therefore, presented, for the decision of this Court, is—Is there, or is there not, sufficient Equity, stated and alleged in the face of the complainant's bill, so as to give this Court jurisdiction of the matters therein contained? If there is; then this demurrer must be overruled—If there is not; it must be sustained.—*Story's Eq. Plead.* 351, 352, 354, 355. And here, it may be stated, as a general rule, subject to but few exceptions, that where a complainant can have as effectual, and complete, a remedy, in a Court of Law, as in a Court of Equity, and that remedy is direct, certain, and adequate; a demurrer, which is, in truth, a demurrer to the jurisdiction, will hold. But where there is a clear right, and yet there is no remedy, in a Court of Law, or the remedy is not plain, adequate, and complete, or adapted to the peculiar exigency; then, and in such cases, Courts of Equity will maintain jurisdiction.— *Story's Eq. Plead.* 373, 374.

Let us, then, apply these plain principles of a Court of Equity, to this demurrer, and ascertain, whether the same ought to be sustained, or overruled. This bill, then, has been filed for relief; and the first question, therefore, which presents itself, is, what is the nature and character of the complainant's claim, to the fund in dispute? Is it an equitable, or is it a legal claim? For if the claim, which is set up by the complainants, in their bill, be a purely equitable, and not a legal, claim, and they have no effectual, adequate, and complete, remedy, at Law, for the enforcement of their rights, or if that remedy be doubtful; I take it for granted, that a demurrer, for want of Equity, if that Equity appears upon the face of the bill, cannot be sustained. To determine this point, we must bear in mind, according to the facts, stated in the face of the complainants bill, that, previous to the recovery of the judgments, obtained by the defendants, James P. Scriven, " The Female Asylum of the City of Savannah," and Susan Couster, as administratrix with the will annexed of Lucas Lucena, against the defendant, Samuel Miller Bond, he had executed and delivered two mortgages, on his plantation called Ceylon, in the County of McIntosh, the one, in favor of the " Trustees of the General Assembly of the Presbyterian Church," in the United States of America, and the other, in favor of the complainants, to secure certain debts, then due and owing to them by him. That the mortgage, first above mentioned, being the eldest lien upon the premises, was foreclosed,

[Habersham & Son *vs.* Bond & al.]

according to Law, previous to the obtainment of said judgments, and the premises were sold, under said foreclosure, by the Sheriff of McIntosh County, on the first Tuesday in February last—That at such sale, James P. Scriven, one of the defendants, and a junior judgment creditor, became the purchaser, for the sum of thirteen thousand dollars—That, after paying and satisfying, from the proceeds of said sale, the amount due on the first above mentioned mortgage, there remains a large surplus for distribution, which is now claimed, under the above facts, both by the complainants, as well as the defendants; but which fund is insufficient to satisfy these claims, in full—That, at the time of said sale, under the senior mortgage, the mortgage, given to the complainants on the same premises, remained unforeclosed, but was duly recorded, in the Clerk's office of the County of McIntosh, within a few days subsequent to its execution.

Now, from these facts, it is manifest, and so the complainants charge in their bill, that the sale, which has been made of the mortgaged premises, under the foreclosure of the senior mortgage, in favor of The Trustees of the General Assembly of the Presbyterian Church in the United States of America, has vested in the purchaser a good title to the premises, freed and discharged from all subsequent liens and incumbrances. The lien, then, which the complainants originally had upon the premises, by virtue of their mortgage, and prior to the recovery of either of the judgments, in favor of the defendants, was, by that sale, destroyed. They can no longer follow the land, either in a Court of Law, or Equity, in the hands of the bona fide purchaser, for the satisfaction of their debt. But, does it therefore follow, that they have no claim, either legal or equitable, upon the surplus monies, which may have arisen from the sale of the very premises, upon which their lien once existed, in full force, as against junior judgment creditors? I apprehend not. For, if so, there would indeed be little or no use, for any creditor to take such a lien, as a security. That the complainants have an equitable claim, upon the fund in dispute, for the payment and satisfaction of their debt, provided the same be bona fide, and not tainted with fraud, is a point, upon which, under the facts as stated in their bill, it seems to me, there cannot be entertained a reasonable doubt; and the simple question, therefore, which is presented by the present demurrer, is—Have they any plain, adequate, and effectual, remedy, at Law, for the en-

[Habersham & Son *vs.* Bond & al.]

forcement of that claim? Indeed, so far as this Court understands the argument of the defendants counsel, in support of the present demurrer, it is conceded by them, that, if the complainants have any claim, to the fund in dispute, it must be an equitable, and not a legal, claim—and that, therefore, a Court of Law, in the distribution of the fund in dispute, as opposed to the legal claim of the defendants, who are judgment creditors of the said Samuel Miller Bond, must treat the complainants, as strangers to that fund. If this position be true—and I apprehend that it is so—a Court of Law, as a general principle, taking notice only of legal, and not equitable, suits or claims; then, ex concessis, the complainants, in a Court of Law, have no plain, adequate, and complete, remedy, for the enforcement of their rights, but can only be protected, in a Court of Equity, where matters of that nature are properly cognizable, and relievable.

Now, a Court of Law, in the distribution of money, which has been made from the sale of the property of a mortgagor, or defendant in execution, which is in the hands of its officer, generally proceeds to distribute the same, upon notice, and mere motion. As a general principle, it will, as already remarked, take notice, only, of legal claims, to the fund in dispute. The rule, by which these claims are to be governed, as it respects priority, has been fixed, by the act of our own Legislature.—*Prince D.* 435. These cases, generally speaking, are where there are several executions of various dates, without any other lien, or encumbrance, on the land, or where there is a senior judgment and execution, and a subsequent mortgage, and the land is sold under the judgment; or where there is an unforeclosed senior mortgage, and the land has been sold, under a junior judgment. The cases of ex parte City Sheriff, 1 *McCord R.* 399, Jewell *vs.* McGowen, *R. M. Charlton's R.* 391, Bell *vs.* Ryers, 3 *Caine's R.* 84, are cases of that character.

In these, and similar cases, it is clear, that a Court of Law may, upon mere motion, proceed and distribute the fund, among the judgment creditors, without doing injustice to the rights of any other person, who may pretend to claim the same fund.

There are, however, other cases, of a totally different character, which are not unfrequently presented to a Court of Law, involving

[Habersham & Son *vs.* Bond & al.]

legal, as well as equitable, rights to the fund in dispute; and in which, a Court of Law cannot do justice between the conflicting rights, upon mere motion. In such cases, a Court of Law will refuse, as properly it may, to decide upon the rights of the claimants, to the fund in dispute, upon mere motion, but will leave them to settle their conflicting claims, by suit, as they shall be advised. The cases of The State *vs.* Laval, City Sheriff, 4 *McCord's R.* 336; Williams *vs.* Rogers, 5 *John. R.* 167; 18 *John. R.* 163; Dawkins *vs.* Pearson, 2 *Bailey's S. C. R.* 619; are cases, strong to this point, and to which many others might be added, if necessary. And such, I cannot but think, is the case, which is now presented, by the complainants, under the facts, as stated in their bill, to the consideration of this Court. It seems to me, that, under the facts, as stated in this bill, a Court of Law, upon a mere motion, for the distribution of the fund in dispute, (the complainants never having foreclosed their mortgage, on the premises,) could not do justice, between the conflicting rights of the claimants; and that, in a Court of Law, the complainants would have no adequate remedy, for the protection of their rights. In confirmation of the foregoing principle, I will here merely quote a few lines in point, from 2 *Dunlap's N. Y. P.* p. 783 : "Where there are overplus monies (says he) in the hands of " the Sheriff, after satisfying the first execution, *although they can-* " *not, as seems, be levied upon, by virtue of a second execution, yet* " *the Court, in a case where the rights of the parties are so clearly* " *ascertained, that there is no necessity of resorting to a Court of* " *Equity*, will, on motion, direct the application of the surplus, to the " payment of subsequent judgment creditors, according to their pri- " ority, to be determined, where the proceeds arise from the sale of " the lands, by the time of docketing their respective judgments, or " if from the sale of goods and chattels, by the delivery of their ex- " ecutions to the Sheriff." The question, then, as to the distribution of a sum of money, in the hands of the Court, or its officer, is not a strictly legal question, belonging exclusively to a Court of Law, as has been contended for, by the defendants counsel. It is a question which, when presented upon a mere motion, is addressed to the sound discretion of the Court, and upon which the Court may, or may not, act, as to it shall appear most in accordance with right and justice. If, by proceeding to distribute the money, upon mere motion, a Court of Law perceives, that manifest injustice is about to be done, by it,

[Habersham & Son *vs.* Bond & al.]

to the rights of any party having rights; it will refuse its aid, and leave the parties to ascertain their rights, either in a Court of Law, or Equity, as they shall be advised. And it is only in cases, where the rights of parties are so clearly ascertained, that there is no necessity of resorting to a Court of Equity, that a Court of Law will proceed to distribute the fund in dispute, upon mere motion. But, is such the character of the claim to the fund in dispute, as presented by the complainants, in their bill? I apprehend not; and therefore, a Court of Equity is the only jurisdiction, where they can hope to obtain a proper protection, as to their rights.

I might proceed, and confirm these views, by an examination, as to the nature and character of the claims, which have been set up, to the fund in dispute, by the defendants themselves, under the peculiar facts of this case, as presented by the complainants' bill. But, as this is not the proper time, when such an examination should be entered into, I shall refrain from remark, on that point.

For the reasons now given, I am of opinion, that the demurrer, which has been filed by the defendants, to the complainants' bill of complaint, for want of Equity, ought to be over-ruled, and they be required to answer the same : and it is accordingly so ordered,

WILLIAM & WILLIAM T. LAW, for Complainants.
McALLISTER & COHEN, for Defendants.